Peter J. Mastan (CASB No. 190250)
*peter.mastan@dinsmore.com*
Jonathan Serrano (CASB No. 333225)
*jonathan.serrano@dinsmore.com*
DINSMORE & SHOHL LLP
550 S. Hope Street, Suite 1765
Los Angeles, CA  90071
Telephone:  213.335.7737

Counsel to Amy L. Goldman,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>JET MIDWEST GROUP, LLC,<br><br>Debtor. | Case No. 1:21-bk-11524-MT<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASES BETWEEN (A) THE TRUSTEE, AND (B) VARIOUS INSIDERS OF THE DEBTOR INCLUDING WITHOUT LIMITATION KAREN KRAUS, PAUL KRAUS, JET MIDWEST, INC., JET MIDWEST GLOBAL, LLC, JET MIDWEST TECHNIK, INC., AND OTHERS, AND FOR ASSUMPTION AND ASSIGNMENT OF CENTURY BLVD. LEASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF PETER J. MASTAN, SAMUEL BIGGS, AMY L. GOLDMAN, MIKE LOGAN, PAUL KRAUS, AND KAREN KRAUS; AND EXHIBITS**<br><br>Date:      May 15, 2023<br>Time:     11:00 a.m.<br>Place:    Courtroom 302<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA 91367<br>Judge:   Hon. Maureen A. Tighe |

#30326182v1

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, ALL SCHEDULED CREDITORS OF THE ESTATE AND THOSE FILING PROOFS OF CLAIM, AND ALL OTHER INTERESTED PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD, IF ANY:**

PLEASE TAKE NOTICE that, on May 15, 2023, on the 11:00 a.m. calendar, in Courtroom 302 of the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, located at 21041 Burbank Blvd., Woodland Hills, California 91365, the Honorable Maureen A. Tighe, United States Bankruptcy Judge, will conduct a hearing on the "Motion For Order Approving Settlement Agreement and Mutual Releases Between (A) The Trustee, and (B) Various Insiders of the Debtor Including Without Limitation Karen Kraus, Paul Kraus, jet Midwest, Inc., Jet Midwest Global, LLC, Jet Midwest Technik, Inc. and Others, And for Assumption and Assignment of the Century Blvd. Lease" (the "Motion") filed on April 21, 2023 by Amy L. Goldman, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of debtor Jet Midwest Group, LLC (the "Debtor") in the above-captioned bankruptcy case.  Specifically, through the Motion, the Trustee seeks and order that does each of the following:

1.     approves that certain Settlement Agreement and Mutual Releases (the "Agreement") attached as **Exhibit 1** hereto;

2.     provides, pursuant to FED. R. BANKR. P. 9018 and other applicable law, for the continued confidentiality of the Non-Debtor Party Confidential Financial Information, notwithstanding 11 U.S.C. §§ 107(a) and 704, as restricted by Section 5 of the Agreement, regardless of whether the Non-Debtor Party Confidential Financial Information falls within the categories of confidential, propriety or personal protected information included in FED. R. BANKR. P. 9018 and other applicable law; [1]

3.     provides that any and all security interests, Claims or liens of any Trustee Released Parties (including, without limitation, the Non-Debtor Parties) against the Estate or Property of the

---

[1]     Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Agreement.

#30326182v1

1    Estate are disallowed, withdrawn with prejudice, and released, including (but not limited to) Proof of

2    Claim No. 10;

3        4.    provides that the Settlement Payment is free of any rights of the Trustee Released

4    Parties;

5        5.    except as provided in subsection 18(e) of Section 4(d) and Section 6 of the

6    Agreement, provides that the Trustee Released Parties have waived any claims against, or right to

7    payment from, the Estate, including but not limited to, monies sought by: (i) proofs of claim filed in

8    the Debtor's case (including without limitation the JM Inc. Claim); (ii) JM Inc.'s Administrative

9    Expense Claim; and (iii) waiver of trespass claim, if any;

10        6.    provides that the Trustee is not required to reimburse the Non-Debtor Parties for any

11    alleged legal fees or costs, including with respect to both discovery and litigation, incurred up to the

12    date of execution of the Agreement;

13        7.    except for the Assigned Claims, provides that neither the Agreement nor the

14    Bankruptcy Approval Order shall in any way limit, resolve, settle, estop, prejudice or otherwise

15    impact the Top Jet Non-Parties' claims against JM Inc. or any other Trustee Released Party (and any

16    of JM Inc.'s defenses thereto);

17        8.    finds and concludes that each of the Parties are authorized to enter into this

18    Agreement;

19        9.    finds, based on all of the facts and circumstances, including without limitation the

20    financial condition of the Non-Debtor Parties, that all Parties have acted in good faith, negotiated at

21    arm's length, and it is agreed that the value is equivalent value and proportional to the rights being

22    waived and released and determines pursuant to CAL. CIV. PROC. CODE §§ 877 and 877.6 that the

23    settlement is entered into in good faith;

24        10.    orders that:

25            a.    Top Jet Non-Parties are neither giving releases nor bound by the releases

26    herein, and

27    ///

28    ///

3

b.      that all claims of the Top Jet Non-Parties not previously conveyed to the Estate by the settlement between the Top Jet Non-Parties and the Trustee are not assets or property of the Estate;

11.    finds that, notwithstanding anything to the contrary in the Agreement, no claims of the Estate against F. Paul Ohadi, his trust, Kenneth Woolley, and any of their companies, agents, co-conspirators, or those in active concert with them (expressly excepting the Non-Debtor Parties for actions through November 30, 2022 as set forth under the terms of the Agreement), but including (by example but not as a limitation) the following entities: F. Paul Ohadi Trust Dated December 15, 1999, Alta Airlines Holdings, LLC, KMW Business Jets, LLC, KMW Leasing XI 757, LLC, KMW Leasing XII 6- 767, LLC, and KMW Leasing X, LLC are released or otherwise impaired by the terms of the Agreement;

12.    specifically authorizes the limitation of the releases (i.e., subject to Sections 3 and 5) of the Trustee Released Parties and the tolling of all time bars and statutes of limitations and the preservation of the confidentiality under procedures set forth in Section 5(c);

13.    authorizes (a) the Trustee to grant, sell, assign and transfer the Estate's rights, title, interests, and security to all physical assets (including but not limited to aircraft/engines/parts and the associated technical documentation and historical records) and their related tracing and FAA documentation at the JM Inc. facility on Schedule A of the Agreement to JM Inc. without prejudice to any rights of third parties and excluding from such transferred assets any assets not expressly listed on Schedule A, effective upon the Trustee's receipt of the Settlement Payment and that payment having cleared the banking process, and (b) the Trustee to execute and deliver the bill of sale to JM Inc. substantially in the form of Exhibit A to the Agreement, as applicable and upon JM Inc.'s request, and promptly execute and deliver to JM Inc. such registrations, terminations, or other documents as reasonably required to reflect the transfer of the assets with the FAA, International Registry or in any other jurisdiction.  Further, to the extent such actions are required, provide that the Non-Debtor Parties, and each of them, will be responsible for such registrations or terminations (including any costs associated therewith) and that the transfer of the property reflected on Exhibit A to the Agreement shall be deemed to have been made on an AS-IS and WHERE-IS basis, without

4

representation or warranty of any kind, whether express or implied, including without limitation no

representation or warranty as to merchantability or fitness for a particular purpose.

14.    provides that the Parties shall execute the Assignment Agreement for the Century

Boulevard property lease in the form attached to the Agreement as Exhibit B, and authorizing and

approving the Trustee's assumption of and assignment to JM, Inc. of the Century Boulevard property

lease pursuant to the Assignment Agreement;

15.    allocates for the Trustee and the Estate USD $900,000 of the Settlement Payment as

that portion allocable to the Estate's interests of the assets in paragraph 13 directly above (i.e., the

assets reflected on Exhibit A to the Agreement), with the balance of the Settlement Payment

allocated to the compromise of the Estate's potential claims against the Non-Debtor Parties, and

provides that, for tax purposes, the Non-Debtor Parties shall not be bound by the Trustee and the

Estate's allocation;

16.    provides that the Court retains jurisdiction to interpret and enforce the Bankruptcy

Approval Order and the Settlement Agreement and provides that the arbitration provision in Section

9 of the Agreement applies only if the Court and the United States District Court have no jurisdiction

17.    binds any successor to this Agreement; and

18.    provides that the Trustee shall not be in breach of the covenant not to sue the Non-

Debtor Parties as set forth in Section 3 of the Agreement, if, following the Effective Date of the

Agreement, as provided for in paragraph 19 immediately below,  the Trustee files an adversary

proceeding ("Adversary Proceeding") against one or more of the Non-Debtor Parties provided that

each of the following conditions are fully satisfied:

a.    The complaint filed in the Adversary Proceeding (the "Complaint") provides

that:

i.    the Non-Debtor Parties have been named as "nominal" defendants

solely for the purpose of avoiding any claim by any other defendants that the Trustee has failed to

join the Non-Debtor Parties in the Adversary Proceeding as required by Rule 19 of the Federal Rules

of Civil Procedure or applicable case law,

///

#30326182v1

ii.    unless the Settlement Agreement is rescinded or not approved by the Bankruptcy Court, the Trustee's claims asserted against the Non-Debtor Defendants are the subject of a Settlement Agreement that have been or shall be released when Settlement Agreement is Effective and will then result in a dismissal, with prejudice, of all claims released by Section 4(b), if any, except claims expressly preserved under the Settlement Agreement; and the Trustee seeks no affirmative relief or recovery or adjudication of any rights, interests or claims against any of the Non-Debtor Parties in the Adversary Proceeding if the Settlement Agreement is Effective;

b.    The Trustee shall file a stipulation and lodge order approving the stipulation substantially in the forms attached to the Agreement as Exhibit C to the Agreement, contemporaneously with filing a Complaint, in the court in which the Adversary Proceeding is pending that:

i.    stays all proceedings in the Adversary Proceeding as to the Non-Debtor Parties, and

ii.    excuses the Non-Debtor Parties from responding to the Complaint and from participating in any discovery or motion practice in the Adversary Proceeding, or complying with Rule 7016 pending dismissal of the Adversary Proceeding as to the Non-Debtor Parties;

c.    The Trustee's joining of the Non-Debtor Parties in the Adversary Proceeding shall not constitute or be interpreted as the Non-Debtor Parties' express or implied consent to the jurisdiction of any court, or a waiver of any rights of the Non-Debtor Parties, including, without limitation, the right, if any, to a jury trial and the right, if any, to have an Article III Court adjudicate any claims or causes of action (including all pre-trial motions related thereto) asserted against any of them by the Trustee or any other party;

d.    The Complaint in the Adversary Proceeding shall not be served on any of the Non-Debtor Parties, unless otherwise ordered by the applicable court;

e.    Promptly, but not later than three business days after the other parties to the Adversary Proceeding file their answers, the Trustee request dismissal of the Adversary Proceeding against all Non-Debtor Parties.

///

#30326182v1

f.      In the event that the Trustee's Complaint causes the Non-Debtor Parties to incur any out of pocket costs (excluding attorneys' fees) prior to the Non-Debtor Parties' dismissal from the Adversary Proceeding, then the Trustee shall reimburse the Non-Debtor Parties for reasonable out of pocket costs. The Bankruptcy Court shall have authority to resolve any disagreement between the Non-Debtor Parties and the Trustee regarding the reimbursement of out of pocket costs. In addition, the Non-Debtor Parties may file an application (an "Application") with the Bankruptcy Court seeking an order that provides the Non-Debtor Parties reimbursement from the Estate for reasonable and necessary attorneys' fees incurred as a result of being defendants in the Adversary Proceeding prior to the dismissal of the Non-Debtor Parties from the Adversary Proceeding. In the Bankruptcy Court grants such Application, the Trustee shall promptly pay the Non-Debtor Parties the Bankruptcy Court approved fees and expenses.

19.      Provide that, within two (2) Court days of the Effective Date of the Agreement, the Trustee shall request dismissal with prejudice of all claims released by this Agreement including, without limitation, all claims and causes of action set forth in any adversary proceeding against the Non-Debtor Entities that is pending as of the Effective Date of the Agreement that are not the subject of section 4.d.(18).

20.      Determines that adequate notice of the Motion was given.

**PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on the grounds that the proposed settlement is in the best interests of the Estate, and that the assignment and assumption of the "Century Blvd. Lease" as part of the proposed settlement is made pursuant to 11 U.S.C. § 365.  The Trustee has been pursuing claims against certain insiders of the Debtor. The Trustee contends that the Non-Debtor Parties are liable to the Estate for, among other things, the avoidance and recovery of fraudulent transfers, breaches of fiduciary duty, turnover of Estate property, and the payment of unlawful dividends. The Trustee further contends that the Non-Debtor Parties (or certain of them) lack any corporate form separate and apart from the Debtor and should be substantively consolidated with the Estate. The Non-Debtor Parties dispute the Trustee's contentions and instead assert that the Estate owes money to the Non-Debtor Parties (or certain of them) as set forth in the Administrative Expense Claim, the

#30326182v1

1    JM Inc. Claim, and otherwise. The Trustee disputes that the Estate owes any amount to the Non-

2    Debtor Parties.

3        The proposed settlement is the result of a mediation conducted by the Hon. Martin Barash,

4    United States Bankruptcy Judge.  The mediation began on August 2022 and continued thereafter

5    through multiple in-person mediation sessions and multiple telephonic mediation sessions consisting

6    of more than approximately 30 hours of mediation.  The Agreement has been heavily negotiated by

7    both sides.

8        From the Trustee's perspective, the proposed settlement is compelled by the limited financial

9    wherewithal of the Non-Debtor Parties.  The Trustee asserts that the Estate holds claims against

10   various of the Non-Debtor Parties in excess of $100 million.  The Trustee has reviewed "Confidential

11   Financial Information" provided to the Trustee by the Non-Debtor Parties; financial information that

12   the Non-Debtor Parties are representing and warranting to the Trustee are true, correct and complete

13   in all material respects.  Based on the Trustee's review of the Confidential Financial Information, the

14   Trustee does not believe that the Non-Debtor Parties have the ability to fully respond to and satisfy

15   the full amount of any judgment that the Trustee believes she could obtain against them and, as such,

16   has agreed to resolve the Estate's claims for an amount that (a) allows the Non-Debtor Parties to

17   continue to operate and avoid bankruptcy, and (b) maximizes for the Estate the amount that the

18   Trustee could likely recover from the Non-Debtor Parties in the event that a substantial judgment is

19   collected.  Specifically, under the proposed Agreement, and subject to Bankruptcy Court approval,

20   the Trustee is settling the Estate's claims against the Non-Debtor Parties for $6.25 million. The

21   Agreement provides for a mutual release of claims as between the Trustee Released Parties and Non-

22   Debtor Released parties. In addition, as part of the proposed settlement, the Trustee is transferring to

23   JM, Inc. the Estate's rights, title, and interest in and  to all physical assets (including but not limited

24   to aircraft/engines/parts and the associated technical documentation and historical records) and their

25   related tracing and FAA documentation at the JM Inc. facility identified on Exhibit A to the

26   Agreement (without prejudice to any rights of third parties and excluding from such transferred

27   assets any assets not expressly listed on Schedule A to the Agreement).  Finally, the Trustee will

28   pursue the other defendants in the pending litigation who appear to have more financial wherewithal.

8

*The foregoing contains a summary of the terms of the proposed settlement. The actual terms of the proposed settlement are as set forth in the Agreement. Interested parties are encouraged to read the Agreement. Any conflict between the summary in this Notice and the terms of the Agreement shall be controlled by the terms of the Agreement.*

**PLEASE TAKE FURTHER NOTICE** that, in support of this Motion, the Trustee relies upon (a) the attached Memorandum of Points and Authorities, Declarations of Peter J. Mastan, Samuel Biggs, Amy L. Goldman, Mike Logan, Paul Kraus, and Karen Kraus, and Exhibits; (b) the concurrently filed notice of hearing on the Motion, (c) the concurrently filed supplemental notice of hearing on the Motion, (d) the documents on file with the Court of which the Court is requested to take judicial notice; (e) such further evidence that may be properly submitted prior to or at the hearing on the Motion; and (f) all matters of which the Court may take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rules 9013-1(f), any response and request for hearing must be (i) in writing and include a complete written statement of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely and any responding memorandum of points and authorities, and (ii) **filed with the Clerk of the Bankruptcy Court at 21041 Burbank Blvd., Woodland Hills, California 91367 and served no later than fourteen (14) days prior to the hearing on this *Motion* on the following parties:**

| **For Filing with the Court:** | **For Service on Judge Tighe:** |
|---|---|
| Clerk's Office | Hon. Maureen A. Tighe |
| United States Bankruptcy Court | United States Bankruptcy Court |
| 21041 Burbank Boulevard | 21041 Burbank Blvd, Suite 324 |
| Woodland Hills, CA 91367 | Woodland Hills, CA 91367 |
| | |
| **For Service on the Trustee:** | **For Service on the U.S. Trustee:** |
| Amy L. Goldman, Trustee | Office of the U.S. Trustee |
| c/o Peter J. Mastan, Esq. | 915 Wilshire Blvd., Suite 1850 |
| Dinsmore & Shohl LLP | Los Angeles, CA 90017 |
| 550 S. Hope Street, Suite 1765 | |
| Los Angeles, CA 90071-2627 | |

///

///

9

**<u>For Service on Non-Debtor Parties</u>**
Eve Karasik, Esq.
Gary Klausner, Esq.
Levene Neale Bender Yoo & Golubchik, LLP
2818 La Cienega Ave
Los Angeles, CA 90034

    **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule

9013-1(h), the failure to timely file and serve an opposition may be deemed by the Court to be

consent to the granting of the relief requested in the Motion.

DATED: April 24, 2023                         Respectfully submitted,

                                              DINSMORE & SHOHL LLP


                                              By:_____
                                                     Peter J. Mastan
                                              Counsel to Amy L. Goldman,
                                              Chapter 7 Trustee

10

#30326182v1

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ……………………………….……..11

I.  INTRODUCTION .................................................................................................... 11

II.  STATEMENT OF FACTS ...................................................................................... 16

    A.  The Debtor's Pre-Petition Activities ............................................................ 16

    B.  The Debtor's Bankruptcy Filing and Appointment of the Trustee ................. 16

    C.  The Trustee's Retention of Professionals ...................................................... 17

    D.  The Missouri Litigation ................................................................................ 17

    E.  The Trustee's Settlement with the Top Jet Non-Parties ................................ 18

    F.  The Trustee's Efforts to Liquidate the Inventory .......................................... 18

    G.  The Non-Debtor Parties' Claims Against the Estate ..................................... 19

    H.  The Trustee's Mediation With the Non-Debtor Parties ................................. 20

    I.  The Trustee's Complaint ............................................................................... 21

III. SUMMARY OF SETTLEMENT AGREEMENT ..................................................... 22

IV. STANDARD FOR APPROVAL OF A SETTLEMENT ........................................... 22

V.  THE PROPOSED SETTLEMENT IS FAIR AND EQUITABLE ............................ 23

    A.  Probability of Success in Litigation ............................................................. 23

    B.  Collectability On a Substantial Judgment ..................................................... 23

    C.  Complexity of the Litigation Involved .......................................................... 24

VI.  THE PROPOSED SETTLEMENT WAS ENTERED INTO IN GOOD FAITH ........ 25

VII. THE COURT SHOULD APPROVE THE TRUSTEE'S ASSUMPTION AND ASSIGNMENT
    OF THE CENTURY BLVD. LEASE ...................................................................... 27

DECLARATION OF PETER J. MASTAN ..................................................................... 29

DECLARATION OF AMY L. GOLDMAN ................................................................... 34

DECLARATION OF SAMUEL BIGGS ........................................................................ 35

#30326182v1

# TABLE OF AUTHORITIES

## Cases

*Abbott Ford, Inc. v. Superior Court,*
   43 Cal. 3d 858 (1987) ........................................................................................... 26

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med Grp., Inc.),*
   476 F.3d 665 (9th Cir. 2007). ............................................................................... 27

*In re A & C Properties,*
   784 F.2d 1377 (9th Cir. 1986) ........................................................................ 22, 23

*In re Blair,*
   538 F.2d 849 (9th Cir. 1976) ................................................................................. 23

*In re W.T. Grant Co.,*
   699 F.2d 599 (2d Cir. 1983) .................................................................................. 23

*In re Walsh Construction, Inc.,*
   669 F.2d 1325 (9th Cir. 1982) ............................................................................... 23

*River Garden Farms, Inc. v. Superior Court,*
   26 Cal. App. 3d 986 (1972). .................................................................................. 26

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.,*
   38 Cal. 3d 488 (1985) ........................................................................................... 26

## Statutes

11 U.S.C. § 365 ............................................................................................................ 7, 11

11 U.S.C. § 365(a) ........................................................................................................... 27

11 U.S.C. § 365(f)(1) ...................................................................................................... 27

11 U.S.C. § 107(a) ...................................................................................................... 2, 11

11 U.S.C. § 704 .......................................................................................................... 2, 11

CAL. CIV. PROC. CODE § 877 .................................................................................. 3, 12, 25

CAL. CIV. PROC. CODE § 877.6 ............................................................................... 3, 12, 25

FED. R. BANKR. P. 9018 ............................................................................................... 2, 11

FED. R. BANKR. P. 9019 ............................................................................................... 7, 11

FED. R. BANKR. P. 9019(a). .............................................................................................. 22

#30326182v1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Amy L. Goldman, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of debtor Jet Midwest Group, LLC ("JMG" or the "Debtor") in the above-captioned bankruptcy case (the "Case"), submits this Memorandum of Points and Authorities in support of her motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 11 U.S.C. § 365 for an order approving her $6.25 million settlement with certain insiders of the Debtor, including without limitation Paul Kraus, Karen Kraus, Jet Midwest, Inc., Jet Midwest Global, LLC, Jet Midwest Technik, Inc. and others, and the Trustee's assumption and assignment of the "Century Blvd. Lease."  Specifically, the Trustee seeks an order that does each of the following:

1.    approves the Settlement Agreement and Mutual Releases (the "Agreement") attached as **Exhibit 1** hereto;

2.    provides, pursuant to FED. R. BANKR. P. 9018 and other applicable law, for the continued confidentiality of the Non-Debtor Party Confidential Financial Information, notwithstanding 11 U.S.C. §§ 107(a) and 704, as restricted by Section 5 of the Agreement, regardless of whether the Non-Debtor Party Confidential Financial Information falls within the categories of confidential, propriety or personal protected information included in FED. R. BANKR. P. 9018 and other applicable law; [2]

3.    provides that any and all security interests, Claims or liens of any Trustee Released Parties (including, without limitation, the Non-Debtor Parties) against the Estate or Property of the Estate are disallowed, withdrawn with prejudice, and released, including (but not limited to) Proof of Claim No. 10;

4.    provides that the Settlement Payment is free of any rights of the Trustee Released Parties;

5.    except as provided in subsection 18(e) of Section 4(d) and Section 6 of the Agreement, provides that the Trustee Released Parties have waived any claims against, or right to

---

[2]    Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Agreement.

#30326182v1

1   payment from, the Estate, including but not limited to, monies sought by: (i) proofs of claim filed in

2   the Debtor's case (including without limitation the JM Inc. Claim); (ii) JM Inc.'s Administrative

3   Expense Claim; and (iii) waiver of trespass claim, if any;

4       6.      provides that the Trustee is not required to reimburse the Non-Debtor Parties for any

5   alleged legal fees or costs, including with respect to both discovery and litigation, incurred up to the

6   date of execution of the Agreement;

7       7.      except for the Assigned Claims, provides that neither the Agreement nor the

8   Bankruptcy Approval Order shall in any way limit, resolve, settle, estop, prejudice or otherwise

9   impact the Top Jet Non-Parties' claims against JM Inc. or any other Trustee Released Party (and any

10  of JM Inc.'s defenses thereto);

11      8.      finds and concludes that each of the Parties are authorized to enter into this

12  Agreement;

13      9.      finds, based on all of the facts and circumstances, including without limitation the

14  financial condition of the Non-Debtor Parties, that all Parties have acted in good faith, negotiated at

15  arm's length, and it is agreed that the value is equivalent value and proportional to the rights being

16  waived and released and determines pursuant to CAL. CIV. PROC. CODE §§ 877 and 877.6 that the

17  settlement is entered into in good faith;

18      10.     orders that:

19              a.      Top Jet Non-Parties are neither giving releases nor bound by the releases

20  herein, and

21              b.      that all claims of the Top Jet Non-Parties not previously conveyed to the Estate

22  by the settlement between the Top Jet Non-Parties and the Trustee are not assets or property of the

23  Estate;

24      11.     finds that, notwithstanding anything to the contrary in the Agreement, no claims of the

25  Estate against F. Paul Ohadi, his trust, Kenneth Woolley, and any of their companies, agents, co-

26  conspirators, or those in active concert with them (expressly excepting the Non-Debtor Parties for

27  actions through November 30, 2022 as set forth under the terms of the Agreement), but including (by

28  example but not as a limitation) the following entities: F. Paul Ohadi Trust Dated December 15,

12

1999, Alta Airlines Holdings, LLC, KMW Business Jets, LLC, KMW Leasing XI 757, LLC, KMW

Leasing XII 6- 767, LLC, and KMW Leasing X, LLC, are released or otherwise impaired by the

terms of the Agreement;

12.    specifically authorizes the limitation of the releases (i.e., subject to Sections 3 and 5)

of the Trustee Released Parties and the tolling of all time bars and statutes of limitations and the

preservation of confidentiality under procedures set forth in Section 5(c);

13.    authorizes (a) the Trustee to grant, sell, assign and transfer the Estate's rights, title,

interests, and security to all physical assets (including but not limited to aircraft/engines/parts and the

associated technical documentation and historical records) and their related tracing and FAA

documentation on Schedule A of the Agreement to JM Inc. without prejudice to any rights of third

parties and excluding from such transferred assets any assets not expressly listed on Schedule A,

effective upon the Trustee's receipt of the Settlement Payment and that payment having cleared the

banking process, and (b) the Trustee to execute and deliver the bill of sale to JM Inc. substantially in

the form of Exhibit A to the Agreement, as applicable and upon JM Inc.'s request, and promptly

execute and deliver to JM Inc. such registrations, terminations, or other documents as reasonably

required to reflect the transfer of the assets with the FAA, International Registry or in any other

jurisdiction.  Further, to the extent such actions are required, provide that the Non-Debtor Parties, and

each of them, will be responsible for such registrations or terminations (including any costs

associated therewith) and that the transfer of the property reflected on Schedule A to the Agreement

shall be deemed to have been made on an AS-IS and WHERE-IS basis, without representation or

warranty of any kind, whether express or implied, including without limitation no representation or

warranty as to merchantability or fitness for a particular purpose.

14.    provides that the Parties shall execute the Assignment Agreement for the Century

Boulevard property lease in the form attached to the Agreement as Exhibit B, and authorizing and

approving the Trustee's assumption of and assignment to JM, Inc. of the Century Boulevard property

lease pursuant to the Assignment Agreement;

15.    allocates for the Trustee and the Estate USD $900,000 of the Settlement Payment as

that portion allocable to the Estate's interests of the assets in paragraph 13 directly above (i.e., the

13

assets reflected on Schedule A to the Agreement), with the balance of the Settlement Payment

allocated to the compromise of the Estate's potential claims against the Non-Debtor Parties, and

provides that, for tax purposes, the Non-Debtor Parties shall not be bound by the Trustee and the

Estate's allocation;

16.     provides that the Court retains jurisdiction to interpret and enforce the Bankruptcy

Approval Order and the Settlement Agreement and provides that the arbitration provision in Section

9 of the Agreement applies only if the Court and the United States District Court have no jurisdiction

17.     binds any successor to this Agreement; and

18.     provides that the Trustee shall not be in breach of the covenant not to sue the Non-

Debtor Parties as set forth in Section 3 of the Agreement, if, following the Effective Date of the

Agreement, as provided for in paragraph 19 immediately below,  the Trustee files an adversary

proceeding ("Adversary Proceeding") against one or more of the Non-Debtor Parties provided that

each of the following conditions are fully satisfied:

a.     The complaint filed in the Adversary Proceeding (the "Complaint") provides

that:

i.     the Non-Debtor Parties have been named as "nominal" defendants

solely for the purpose of avoiding any claim by any other defendants that the Trustee has failed to

join the Non-Debtor Parties in the Adversary Proceeding as required by Rule 19 of the Federal Rules

of Civil Procedure or applicable case law;

ii.     unless the Settlement Agreement is rescinded or not approved by the

Bankruptcy Court, the Trustee's claims asserted against the Non-Debtor Defendants are the subject

of a Settlement Agreement that have been or shall be released when Settlement Agreement is

Effective and will then result in a dismissal, with prejudice, of all claims released by Section 4(b), if

any, except claims expressly preserved under the Settlement Agreement; and the Trustee seeks no

affirmative relief or recovery or adjudication of any rights, interests or claims against any of the Non-

Debtor Parties in the Adversary Proceeding if the Settlement Agreement is Effective;

b.     The Trustee shall file a stipulation and lodge order approving the stipulation

substantially in the forms attached to the Agreement as Exhibit C to the Agreement,

#30326182v1

contemporaneously with filing a Complaint, in the court in which the Adversary Proceeding is

pending that:

                i.       stays all proceedings in the Adversary Proceeding as to the Non-Debtor

Parties, and

                ii.      excuses the Non-Debtor Parties from responding to the Complaint and

from participating in any discovery or motion practice in the Adversary Proceeding, or complying

with Rule 7016 pending dismissal of the Adversary Proceeding as to the Non-Debtor Parties;

                c.      The Trustee's joining of the Non-Debtor Parties in the Adversary Proceeding

shall not constitute or be interpreted as the Non-Debtor Parties' express or implied consent to the

jurisdiction of any court, or a waiver of any rights of the Non-Debtor Parties, including, without

limitation, the right, if any, to a jury trial and the right, if any, to have an Article III Court adjudicate

any claims or causes of action (including all pre-trial motions related thereto) asserted against any of

them by the Trustee or any other party;

                d.      The Complaint in the Adversary Proceeding shall not be served on any of the

Non-Debtor Parties, unless otherwise ordered by the applicable court;

                e.      Promptly, but not later than three business days after the other parties to the

Adversary Proceeding file their answers, the Trustee request dismissal of the Adversary Proceeding

against all Non-Debtor Parties.

                f.      In the event that the Trustee's Complaint causes the Non-Debtor Parties to

incur any out of pocket costs (excluding attorneys' fees) prior to the Non-Debtor Parties' dismissal

from the Adversary Proceeding, then the Trustee shall reimburse the Non-Debtor Parties for

reasonable out of pocket costs. The Bankruptcy Court shall have authority to resolve any

disagreement between the Non-Debtor Parties and the Trustee regarding the reimbursement of out of

pocket costs. In addition, the Non-Debtor Parties may file an application (an "Application") with the

Bankruptcy Court seeking an order that provides the Non-Debtor Parties reimbursement from the

Estate for reasonable and necessary attorneys' fees incurred as a result of being defendants in the

Adversary Proceeding prior to the dismissal of the Non-Debtor Parties from the Adversary

///

#30326182v1

1   Proceeding. In the Bankruptcy Court grants such Application, the Trustee shall promptly pay the

2   Non-Debtor Parties the Bankruptcy Court approved fees and expenses.

3       19.     Provide that, within two (2) Court days of the Effective Date of the Agreement, the

4   Trustee shall request dismissal with prejudice of all claims released by this Agreement including,

5   without limitation, all claims and causes of action set forth in any adversary proceeding against the

6   Non-Debtor Entities that is pending as of the Effective Date of the Agreement that are not the subject

7   of section 4.d.(18).

8       20.     Determines that adequate notice of the Motion was given.

9   **II.    STATEMENT OF FACTS**

10      **A.     The Debtor's Pre-Petition Activities**

11      Prior to its bankruptcy filing, the Debtor was part of a group of "Jet Midwest" named entities

12  involved in the acquisition, refurbishing and sale of used airplane parts and planes.  On its face, the

13  Debtor would acquire used aircraft parts and planes and then consign them to JM, Inc. for sale with

14  certain proceeds from that sale to be paid to the Debtor.  Mastan Decl. ¶ 3.

15      JM, Inc. purports to have maintained an inventory (the "Inventory") of the Debtor's property

16  held by JM, Inc. on consignment.  Mastan Decl., ¶ 4.  A copy of the Inventory as provided to the

17  Trustee by counsel for the Non-Debtor Parties is attached as Schedule A to the Agreement.  *Id.*

18      Also prior to bankruptcy, the Debtor entered into a lease, including two amendments thereto

19  (as amended, the "Century Blvd. Lease") of an office space located at 5901 W. Century Blvd., Suite

20  1410, Los Angeles, California 90045 (the "Century Blvd. Property").  Ex. 2.  The Century Blvd.

21  Lease was possessed and used by JM, Inc. for its operations.  To the best of the Trustee's knowledge,

22  and belief, JM, Inc. has continued to pay the lease of the Century Blvd. Lease and the Trustee is not

23  aware of any defaults with respect to that lease.  Mastan Decl., ¶ 5.

24      **B.     The Debtor's Bankruptcy Filing and Appointment of the Trustee**

25      On September 14, 2021, the Debtor filed a voluntary petition for relief under Chapter 7 of

26  Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court

27  for the Central District of California (the "Court" or "Bankruptcy Court"), commencing the above-

28  ///

#30326182v1

1    entitled bankruptcy case (the "Case").  Mastan Decl. ¶ 2.a. The Trustee was appointed to administer

2    the Estate.  *Id.*

3        **C.    The Trustee's Retention of Professionals**

4        By order entered October 18, 2021, the Trustee retained Dinsmore & Shohl LLP as her

5    general bankruptcy counsel [Docket No. 47].  Mastan Decl., ¶ 2.b.

6        By order entered February 4, 2022, the Trustee retained Pillsbury Winthrop Shaw Pittman

7    LLP ("Pillsbury") as her special litigation counsel [Docket No. 102].  Mastan Decl. ¶ 2.c.

8        Prior to the Debtor's bankruptcy filing, Pillsbury represented two creditors of the Debtor, Top

9    Jet Enterprises, Ltd. ("Top Jet") and Jet Midwest International, Co., Ltd. ("International") (Top Jet

10   and International are collectively referred to as the "Top Jet Non-Parties") holding combined claims

11   against the Debtor (some of which had been reduced to judgment) in excess of $139 million.  Ex. 3.

12       **D.    The Missouri Litigation**

13       As part of Pillsbury's representation of the Top Jet Non-Parties, Pillsbury investigated,

14   engaged in litigation, and pursued certain claims against certain insiders of the Debtor, including

15   without limitation certain of the Non-Debtor Parties.  *See* Exs. 3-5.

16       Among other things, Pillsbury brought fraudulent transfer litigation against certain of the

17   Non-Debtor Parties, as well as other insiders related to and including F. Paul Ohadi and Kenneth

18   Woolley (the "Ohadi/Woolley Group").  *See* Exs. 4-6.  That litigation was known as *Jet Midwest*

19   *International Co., Ltd. v. Jet Midwest Group, LLC et al.*  Case No. 5:18-cv-06019-FJG in the United

20   States District Court for the Western District of Missouri (the "Missouri Litigation").  *Id.*        As

21   to the Ohadi/Woolley Group, the Missouri Litigation was bifurcated from the claims against the other

22   defendants.  After a five day trial, the District Court in the Missouri Litigation entered 215 pages of

23   findings of fact and conclusions of law.  Exs. 4 and 5.  Among other things, the Missouri District

24   Court found and/or held that (a) the Ohadi/Woolley Group had received fraudulent transfers from the

25   Debtor totaling not less than $41,054,949.67,[4] and (b) the "loan transactions" between the Debtor and

26   ///

27

28   _____
[4] The Trustee believes that the amount of the fraudulent transfers to the Ohadi/Woolley Group could
exceed this number.

17

1  the Ohadi/Woolley Group (or some of them) were, in fact, equity acquisitions in the Debtor. *See*

2  Exs. 4 and 5.

3      Based on its approximately 215 pages of findings of fact and conclusions of law, on August 6,

4  2020, the Missouri District Court entered an Amended Judgment in a Civil Case (the "Fraudulent

5  Transfer Judgment") against the Ohadi/Woolley Group and in favor of Top Jet in the amount of

6  $8,666,159.74, plus fees and costs and interest at 14% per annum from June 1, 2019 through

7  satisfaction of the Fraudulent Transfer Judgment.[5]  Ex. 5.

8      The Ohadi/Woolley Group appealed the Fraudulent Transfer Judgment to the 8th Circuit.  By

9  order entered March 15, 2023, the 8th Circuit affirmed the Fraudulent Transfer Judgment.  Ex. 6.

10     **E.**    **The Trustee's Settlement with the Top Jet Non-Parties**

11     By order entered February 4, 2022 [ECF No. 101], the Bankruptcy Court approved a

12  settlement (the "Top Jet Settlement") among (a) the Trustee, and (b) the Top Jet Non-Parties.  Mastan

13  Decl. ¶ 2.h.  Pursuant to the Top Jet Settlement, certain claims of the Top Jet Non-Parties (the

14  "Assigned Claims") were contributed to the Estate, and could be settled by the Trustee. Mastan

15  Decl., ¶ 2.h.  The settlement also allowed certain claims of the Top Jet Non-Parties in the total

16  amount of $139,447,729.58.  *Id.; see also* ECF Nos. 67 and 101.

17     **F.**    **The Trustee's Efforts to Liquidate the Inventory**

18     During the course of the Trustee's administration of the Estate, the Trustee obtained the

19  Inventory from the Non-Debtor Parties.  Mastan Decl., ¶ 4; Ex. 1.  The Trustee attempted to market

20  that inventory and identified various persons/entities that were interested in either (1) purchasing

21  some or all of the Inventory, or (2) conducting an auction of the Inventory.  *Id.* at ¶¶ 6-7.

22     Among other things, the Trustee sought and obtained input from three entities who specialize

23  in the sale and/or auction of used airplane parts.  Mastan Decl., ¶ 6.  Those auctioneers identified

24  various issues with respect to the Inventory.  *Id.*  By way of example, the auctioneers noted that the

25  parts were stale in that they had been sitting for years and that certain of the models of planes for

26

27

---

28  [5] The Missouri District Court also awarded attorneys' fees against the Ohadi/Woolley Group, which
award remains on appeal to the 8th Cir.

#30326182v1

1   which the parts are applicable are generally no longer flying in the United States.[6]  *Id.*  Importantly,

2   the auctioneers were clear with the Trustee that any auction of the parts would necessarily take place

3   at the JM, Inc. facility because the cost of moving and storing the parts for an auction to be held at a

4   different location would approach or exceed any potential value of the parts.  *Id.*  In general, the

5   auctioneers estimated the auction value of the parts at approximately $1.5 million, which amount

6   would be subject to a commission and the payment of costs of sale.  *Id.*  Based on the information

7   provided by the auctioneers, the Trustee estimated that the sale of the Inventory through auction

8   would likely net the Estate between $700-$800,000.[7]  Mastan Decl., ¶ 6.

9       In addition to the auctioneers, the Trustee received a cash purchase offer for certain of the

10  "business jet" portion of the Inventory.  Mastan Decl., ¶ 7.  The Trustee understands that the business

11  jet portion of the Inventory constitutes the most valuable and marketable portion of the Inventory.  *Id.*

12  That purchase offer was for $900,000.  *Id.*

13      **G.       The Non-Debtor Parties' Claims Against the Estate**

14      On December 14, 2021, JM Inc. filed in the Bankruptcy Case proof of claim number 10 against

15  the Estate (the "JM Inc. Claim") in the amount of $1,158,670.79.  Ex. 7.  The JMI Inc. Claim was

16  inventory teardown costs, repair costs, and other damages.  *Id.*  JM Inc. asserted a statutory lien against

17  the Inventory for these amounts.  *Id.*

18      On July 6, 2022, JM Inc. filed in the Bankruptcy Case a "Motion For Entry of an Order: (A)

19  Allowing an Administrative Expense Priority Claim . . ." [ECF No. 138] asserting a right to payment

20  from the Estate for, among other things, storage, rent, insurance and other expenses (the "Administrative

21  Expense Claim").  Mastan Decl., ¶ 2.j.  Through the Administrative Expense Claim, JM, Inc. sought

22  from the Estate $410,899.86 plus ongoing expenses of $39,133.32 from August 1, 2022 forward.[8]  *Id.*

23  A hearing on the Administrative Expense Claim was originally scheduled for July 27, 2022, but has

24  been continued from time to time and is currently scheduled for May 15, 2023 at 11:00 a.m.  *Id.*

25  ────────────
[6] During pre-petition litigation involving the Top Jet Non-Parties (or either of them) and certain of

26  the Non-Debtor Parties, the Missouri District Court entered an injunction prohibiting JM, Inc. from
selling the Debtor's consigned property.  Ex. 5.

27  [7] In order to conduct an auction at the JM, Inc. location, the Trustee would likely incur substantial
additional costs charged by JM, Inc. for lease space and labor as JM, Inc.  Mastan Decl., ¶ 6.

28  [8] If JM, Inc.'s claim is valid, then the amount of that claim through approximately April 2023 would
total approximately $723,966.42.

#30326182v1

**H.**    **The Trustee's Mediation With the Non-Debtor Parties**

After approval of the Top Jet Settlement, and after the Trustee retained Pillsbury as her special litigation counsel, with Pillsbury's assistance, the Trustee prepared a draft complaint against the Non-Debtor Parties and others including proposed claims for, among other things, (1) avoidance and recovery of fraudulent transfers, (2) turnover of Estate property, (3) breach of fiduciary duty, (4) denial of the Non-Debtor Parties' proof of claim against the Estate, and (5) substantive consolidation. Mastan Decl., ¶ 8.

Within the mediation privilege, and at the Non-Debtor Parties' request, the Trustee provided a copy of the draft complaint to the Non-Debtor Parties, and the parties exchanged information, both formally and informally, regarding the Assigned Claims and other potential claims of the Estate against the Non-Debtor Parties. Mastan Decl. ¶ 8.

In an effort to resolve the disputes between the Trustee and the Non-Debtor Parties, the Trustee and the Non-Debtor Parties participated in a mediation with the Honorable Martin R. Barash, United States Bankruptcy Judge, serving as mediator. Mastan Decl., ¶ 9. That mediation began on August 30, 2022 and continued on multiple dates thereafter. *Id.* The mediation was conducted over multiple days in-person, as well as multiple days remotely by telephone and/or video conference. *Id.* The Trustee estimates that more than 30 hours of mediation took place among the parties and Judge Barash. *Id.*

In connection with the mediation, the Non-Debtor Parties provided to the Trustee certain financial information (the "Non-Debtor Confidential Financial Information") for the purpose of permitting the Trustee to understand the financial limitations of the Non-Debtor Parties in light of the very significant claims asserted by the Trustee against the Non-Debtor Parties. Mastan Decl,. ¶ 10. That information was provided to the Trustee confidentially pursuant to the mediation privilege, and then subject to a confidentiality stipulation approved by the Court on January 11, 2023. Ex. 8.

Under the agreed upon confidentiality terms, in general, the Non-Debtor Confidential Financial Information could only be reviewed by the Trustee (and persons at her firm), the Trustee's

///

///

#30326182v1

1  general bankruptcy counsel (Dinsmore & Shohl), and the Trustee's accountants (SL Biggs).[9]  Ex. 8.

2  The Non-Debtor Confidential Financial Information consists of approximately 3,317 pages of

3  financial disclosures concerning the Non-Debtor Parties, their holdings, and their affiliates.  Mastan

4  Decl., ¶ 10.

5      As set forth in the Agreement, the Non-Debtor Parties are representing and warrantying that

6  the Non-Debtor Confidential Financial Information is true, correct, and complete as of November 30,

7  2022 (the date for which the Trustee's proposed releases of the Non-Debtor Parties are effective as

8  of).[10]  Ex. 1, § 5.

9      The Non-Debtor Confidential Financial Information has been reviewed by the Trustee and

10  analyzed by her accountants.  Biggs Decl., ¶ 2.  Having made that review, and based upon

11  representations made by the Non-Debtor Parties that the Non-Debtor Confidential Financial

12  Information is true, correct, and complete in all material respects, the Trustee has exercised her

13  reasonable business judgment to compromise the Estate's claims against the Non-Debtor Parties for

14  $6.25 million, plus the release of the JM, Inc. Claim (a prepetition, secured claim of $1,158,670.79)

15  and the Administrative Expense Claim (which, if valid, would total through April 2023

16  approximately $723,966.42), while preserving all of the Estate's claims against the Ohadi/Woolley

17  Group.  Ex. 1.

18      **I.    The Trustee's Complaint**

19      On April 21, 2023, the Trustee filed a "Plaintiffs' Original Complaint" (the "Complaint")

20  against certain of the Non-Debtor Parties (i.e., Jet Midwest, Inc., Jet Midwest Technik, Inc., Paul

21  Kraus, and Karen Kraus), as well as against Kenneth M. Woolley, F. Paul Ohadi, individually and as

22

23  [9] The Trustee is, however, authorized to provide those documents to the Office of the United States
   Trustee (upon its request).  To the extent that the Court requires review of those documents, the

24  Trustee and the Non-Debtor Parties request that they be reviewed *in camera* and/or that the Trustee
   be permitted to file those voluminous documents under seal.  *See* Ex. 1, Section 5.

25  [10] This is a financially based settlement and is based on the Confidential Non-Debtor Financial
   Information provided to the Trustee.  The Trustee is relying upon the Non-Debtor Parties'

26  representations and warranties that the Confidential Non-Debtor Financial Information is true,

27  correct, and complete in all material respects.  As set forth in the Agreement, if the Trustee
   determines that the Non-Debtor Parties breached those representations, then the Estate's releases of

28  the Non-Debtor Parties provided for in the Agreement would be annulled, in accordance with certain
   terms and procedures set forth in the Agreement.

21

1   trustee of the F. Paul Ohadi Trust dated December 15, 1999, and Alta Airlines Holdings, LLC, KMW

2   Business Jets, LLC.  Ex. 9.  The Complaint asserts various claims against the Non-Debtor Parties and

3   the Ohadi/Woolley Group as defendants, including claims for avoidance and recovery of fraudulent

4   transfers, turnover of Estate property, breach of fiduciary duty, objections to claims, avoidance of

5   purported liens, subordination of liens and claims, substantive consolidation with non-debtors, and

6   other claims.[11]  *Id.* The Complaint seeks to recover in excess of $123 million.

7   **III.    SUMMARY OF SETTLEMENT AGREEMENT**

8          Subject to Bankruptcy Court approval, and on the terms set forth in the Agreement, the

9   Trustee and the Non-Debtor Parties are settling their respective disputes and exchanging releases.

10  Pursuant to the Agreement, the Non-Debtor Parties will pay to the Estate a total of $6,250,000 and

11  will release all of their claims against the Estate, including without limitation the Administrative

12  Expense Claim and the JM, Inc. Claim.  In return, the Trustee is releasing the Non-Debtor Parties,

13  preserving all claims against the Ohadi/Woolley Group, and transferring title to the property reflected

14  on the JMI Inventory to JMI.

15         ***The foregoing is only a summary of the terms of the Agreement. The actual terms of the***

16  ***proposed settlement are as set forth in the Agreement. Interested parties are encouraged to read***

17  ***the Agreement. Any conflict between this summary and the terms of the Agreement shall be***

18  ***controlled by the terms of the Agreement.***

19  **IV.    STANDARD FOR APPROVAL OF A SETTLEMENT**

20         The authority granted a trustee to compromise a controversy is set forth in Bankruptcy Rule

21  9019(a), which provides in relevant part that, "[o]n motion by the trustee and after notice and a

22  hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "A court

23  may approve a compromise or settlement only when it is 'fair and equitable.'" *In re A & C*

24  *Properties*, 784 F.2d 1377, 1383 (9th Cir. 1986) (citation omitted).

25         In determining whether a proposed settlement is fair and equitable, courts in the Ninth Circuit

26  must consider the following factors:

27

28  [11] The claims for relief asserted in the Complaint against Non-Debtor Parties are being resolved by
    the proposed settlement. *See* Ex. 1.

                                              22

(a) the probability of success in the litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d at 1381. A court is not "to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983) (citation omitted). A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken. *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849, 851–52 (9th Cir. 1976).

## V.    THE PROPOSED SETTLEMENT IS FAIR AND EQUITABLE

The Trustee's proposed settlement is fair, equitable, and reasonable, given the particular circumstances in this Case. All four of the factors from *A & C Properties* weigh in favor of approving this Agreement.

### A.    Probability of Success in Litigation

The Trustee believes that she has a high probability of success in her litigation filed against the Non-Debtor Parties. However, all litigation includes uncertainty and the possibility of adverse rulings. With respect to the proposed settlement, however, likelihood of success in not the driving factor. Instead, this is a financially driven settlement based in large part upon the Trustee's evaluation of her limited ability to collect a substantial judgment, the costs of getting to such a judgment, and the paramount interests of creditors.

### B.    Collectability On a Substantial Judgment

The Trustee's evaluation of collectability from the Non-Debtor Parties is the driving force behind the amount of the settlement. As noted above, the Trustee believes that she would ultimately be successful in obtaining a substantial judgment against the Non-Debtor Parties. However, the Trustee is also confident that, based upon the financial information provided by the Non-Debtor

23

1 Parties, their representation and warranty that all such financial information is true, correct, and

2 complete in all material respects as of November 30, 2022, and the fact that the Trustee's release of

3 the Non-Debtor Parties may be canceled or annulled if such information is not so, the Trustee does

4 not believe that the Non-Debtor Parties have the financial wherewithal to satisfy a judgment in the

5 tens of millions of dollars.  In fact, the Trustee believes that, though the settlement, the Estate will net

6 as much or more money from the Non-Debtor Parties than through litigation (particularly after taking

7 into consideration the costs and risks of adverse rulings in disputing the JM Inc. Claim and the

8 Administrative Expense Claim which purports to increase at the rate of over $33,000 per month).

9     **C.**    **Complexity of the Litigation Involved**

10       The filed litigation against the Non-Debtor Parties and Ohadi/Woolley Group will certainly be

11 highly document intensive and complicated.  The Trustees complaint against the Non-Debtor Parties

12 and others itself is approximately 118 pages in length (exclusive of exhibits) and includes claims for

13 relief for substantive consolidation, fraudulent transfer, and breaches of fiduciary duty.  While the

14 Trustee has retained highly sophisticated litigation counsel (i.e., Pillsbury) to represent her in

15 connection with that case, the nature of proving such claims is highly document and time intensive

16 effectively requiring Pillsbury (as well as a team of forensic accountants) to introduce evidence of and

17 effect of years of related, inter-company financial transactions based upon purported inter-company

18 invoices and purported inter-company services for which they charged the Debtor.  The Trustee,

19 through the Pillsbury firm, already has in its possession well over a million pages of documents in

20 connection with this matter and would likely be seeking and obtaining many more.

21       The complaint seeks to recover from the entirety of the defendants (including the

22 Ohadi/Woolley Group) in excess of $123 million.  As noted, the Trustee does not believe that the

23 Non-Debtor Parties have the financial resources to pay a substantial portion of such a judgment.

24 However, the other defendants in the adversary proceeding (i.e., the Ohadi/Woolley Group) appear to

25 have much more financial capability.  The proposed settlement with the Non-Debtor Parties is

26 calculated to substantially narrow the scope of the proposed litigation and allow the Trustee to focus

27 her efforts on defendants who have a greater ability to pay and to simplify for the trier of fact the

28 ///

#30326182v1

1   evidence required at trial, thereby increasing Trustee's likelihood of success against these more well

2   healed defendants.

3         **D.**      **Paramount Interest of Creditors**

4         The interests of creditors also weighs in favor of approving the settlement.  Assuming the

5   settlement is consummated, and other than the remaining targets of the Trustee's pending litigation

6   (i.e., the Ohadi/Woolley Group), the Top Jet Non-Parties control the vast majority of all claims filed

7   against the Estate at over $130 million and have contributed their claims to the Estate.  The Top Jet

8   Creditors represented by Pillsbury do not oppose the proposed settlement.

9   **VI.**    **THE PROPOSED SETTLEMENT WAS ENTERED INTO IN GOOD FAITH**

10        Because the Trustee's pending litigation involves allegations against joint tortfeasors, a

11   requirement of the settlement is that the Court make a determination that it is a good faith settlement

12   in accordance with California Code of Civil Procedure §§ 877 and 877.6.

13        The relevant portion of CCP § 877 in as folllows:

14
      Where a release, dismissal with or without prejudice, or a covenant not to sue or not to
15       enforce judgment is given in good faith before verdict or judgment to one or more of a
      number of tortfeasors claimed to be liable for the same tort, or to one or more other co-
16       obligors mutually subject to contribution rights, it shall have the following effect:

17           (a) It shall not discharge any other such party from liability unless its
          terms so provide, but it shall reduce the claims against the others in the
18           amount stipulated by the release, the dismissal or the covenant, or in the
19           amount of the consideration paid for it, whichever is the greater.

20           (b) It shall discharge the party to whom it is given from all liability for
          any contribution to any other parties.
21

22   CAL. CIV. PROC. CODE § 877.

23        In addition, section 877.6 of the California Code of Civil Procedure provides that the issue of

24   "good faith" may be decided at a hearing on a motion brought by any party to the action and that the

25   burden of proof rests upon the party asserting that good faith is lacking. *See* CAL. CIV. PROC. CODE §

26   877.6

27   ///

28   ///

Good faith may be found where the settlement amount appears to be within the "reasonable range" of the settling party's proportionate share of comparative liability for a plaintiff's injuries. *River Garden Farms, Inc. v. Superior Court*, 26 Cal. App. 3d 986, 998 (1972).

"A defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985) (cleaned up). That estimate requires an inquiry into a number of factors, which include (1) the amount offered in settlement in relation to plaintiff's potential recovery; (2) the settlor's proportionate liability; (3) the lack of wrongful conduct; (4) insurance policy limits; (5) the settlor's financial condition; and (6) the allocation of settlement proceeds among the plaintiffs. *Id.* Courts must avoid a rigid application of these factors. *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 873–75 (1987). "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability." *Id.* at 874.

As explained above, this is, in large part, a financially based settlement; a settlement based upon the ability of the Non-Debtor Parties to pay.  As part of her due diligence, the Trustee obtained from the Non-Debtor Parties the Non-Debtor Confidential Financial Information. The Non-Debtor Confidential Financial Information constituted over 3,300 pages of information and disclosures concerning the assets of the Non-Debtor Parties.  The Non-Debtor Confidential Financial Information has been reviewed and evaluated by the Trustee's accountants.  Based thereon, the Trustee believes that the settlement amount of $6.25 million is similar to an amount that the Trustee could recover from the Non-Debtor Parties in the event the Trustee obtained a judgment against them in the tens of millions of dollars.

Moreover, the proposed settlement is the product of nearly eight months of mediation before the Hon. Martin Barash acting as mediator.  The mediation was long, difficult, hard-fought and contentious.  The terms of the proposed settlement are disclosed and there are no side-deals among any of the parties thereto.  The Trustee accepted the $6.25 million figure (in addition to the release of the JM Inc. Claim and the waiver of the Administrative Expense Claim) because she believes that it, as opposed to litigation against the Non-Debtor Parties, will maximize the value of the Estate.

///

#30326182v1

1    Accordingly, the Court should make the good faith determination as requested in the notice of this

2    Motion.

3    **VII.    THE COURT SHOULD APPROVE THE TRUSTEE'S ASSUMPTION AND**

4    **ASSIGNMENT OF THE CENTURY BLVD. LEASE**

5    As part of the proposed settlement, the Trustee seeks to assume and assign to JM Inc. the

6    Estate's interest in the Century Blvd. Lease.

7    Pursuant to 11 U.S.C. § 365(a), the Trustee may assume an existing lease of the Debtor:

8    "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or

9    unexpired lease of the debtor."

10    The Bankruptcy Code also allows the Trustee to assign such a lease.  *See* 11 U.S.C. §

11    365(f)(1) ("Except as provide in subsections (b) and (c) of this section . . . the trustee may assign

12    such contract or lease under paragraph (2) of this subsection.").

13    A bankruptcy estate may assume an executory contract if such assumption provides a benefit

14    to the debtor's estate. *See, e.g.*, *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley*

15    *Med Grp., Inc.)*, 476 F.3d 665, 671 (9th Cir. 2007).

16    The Estate's interest in the Century Blvd. Lease is being assumed and assigned to JM Inc. as part of

17    the proposed settlement.  While the Debtor is the lessee of the Century Blvd. Lease, JM Inc. is and

18    has been in possession of that property since well before bankruptcy and JM Inc. has been making all

19    payments on the lease and performing any and all other obligations under the lease.  The Century

20    Blvd. Lease is of no use or value to the Estate and the assignment of the Estate's interest in that lease

21    to JM Inc. as part of the proposed settlement will avoid any potential future costs or obligations under

22    the lease to the Estate.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

#30326182v1

# VIII.  CONCLUSION

For the reasons set forth above, the Court should grant the relief requested in the Notice of this Motion.

DATED: April 24 2023                                  Respectfully submitted,

                                                      DINSMORE & SHOHL LLP

                                                      By:_____
                                                          Peter J. Mastan
                                                      Counsel to Amy L. Goldman,
                                                      Chapter 7 Trustee of the Bankruptcy
                                                      Estate of Jet Midwest Group, LLC

#30326182v1

## <u>DECLARATION OF PETER J. MASTAN</u>

I, PETER J. MASTAN, declare:

    **1.**    I am an attorney admitted to practice before this Court and I am a partner in Dinsmore & Shohl LLP, counsel to Amy L. Goldman, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Jet Midwest Group, LLC (the "Debtor") in the above-captioned case. As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

    **2.**    The Court may take judicial notice of the following:

        a.    On September 14, 2021, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Court" or "Bankruptcy Court"), commencing the above-entitled bankruptcy case (the "Case"). The Trustee was appointed to administer the Estate.

        b.    By order entered October 18, 2021, the Trustee retained Dinsmore & Shohl LLP as her general bankruptcy counsel.

        c.    By order entered February 4, 2022, the Trustee retained Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as her special litigation counsel.

        d.    Prior to the Debtor's bankruptcy filing, Pillsbury represented two creditors of the Debtor, Top Jet Enterprises, Ltd. ("Top Jet") and Jet Midwest International, Co., Ltd. ("International") (Top Jet and International are collectively referred to as the "Top Jet Non-Parties") holding combined claims against the Debtor (some of which had been reduced to judgment) in excess of $139 million. **Exhibit 3** includes copies of the proofs of claim filed by the Top Jet Non-Parties.

        e.    **Exhibit 4** is an "Amended Order" constituting Findings of Fact and Conclusions of Law filed on August 6, 2020 in the matter known as *Jet Midwest International Co., Ltd. v. Jet Midwest Group, LLC, et al.*, Case No. 5:18-cv-06019-FJG in the United States District Court for the Western District of Missouri (the "Missouri Litigation").

#30326182v1

f.      **Exhibit 5** is an "Amended Judgement In A Civil Case" entered on August 6, 2020 in the Missouri Litigation.

g.      **Exhibit 6** is the decision filed on March 15, 2023 by the United States Court of Appeals for the Eighth Circuit in *Jet Midwest International Co., Ltd. v. Jet Midwest Group, LLC et al.,* Case No. 20-2285, affirming the Fraudulent Transfer Judgment.

h.      By order entered February 4, 2022 [ECF No. 101], the Bankruptcy Court approved a settlement (the "Top Jet Settlement") among (a) the Trustee, and (b) the Top Jet Non-Parties pursuant to which, and among other things, (i) certain claims of the Top Jet Non-Parties (the "Assigned Claims") were contributed to the Estate, and (ii) certain claims of the Top Jet Non-Parties against the Estate were allowed in the total amount of $139,447,729.58.  The motion to approve the Top Jet Settlement is ECF No. 67.

i.      On December 14, 2022, Jet Midwest, Inc. ("JM Inc.") filed in the Bankruptcy Case proof of claim number 10 against the Estate.  **Exhibit 7** is a copy of that proof of claim.

j.      On July 6, 2022, JM Inc. filed in the Bankruptcy Case a "Motion For Entry of an Order: (A) Allowing an Administrative Expense Priority Claim . . ." [ECF No. 138] asserting a right to payment from the Estate for, among other things, storage, rent, insurance and other expenses (the "Administrative Expense Claim").  Through the Administrative Expense Claim, JM, Inc. sought from the Estate $410,899.86 plus ongoing expenses of $39,133.32 from August 1, 2022 forward.  A hearing on the Administrative Expense Claim was originally scheduled for July 27, 2022, but has been continued from time to time and is currently scheduled for May 15, 2023 at 11:00 a.m.

k.      On April 21, 2023, the Trustee filed the "Plaintiffs' Original Complaint" (the "Complaint") attached hereto as **Exhibit 9** seeking to recover in excess of $123 million for the benefit of the Estate.

3.      As counsel to the Trustee, I assisted the Trustee in investigating the facts and circumstances leading up to the Debtor's bankruptcy filing, including the pre-petition roles of various parties-in-interest.  Based on that investigation, I am informed and believe that, (a) prior to its bankruptcy filing, the Debtor was part of a group of "Jet Midwest" named entities involved in

30

#30326182v1

the acquisition, refurbishing and sale of used airplane parts and planes, (b) on its face, the Debtor

would acquire used aircraft parts and planes and then consign them to JM, Inc. for sale with

certain proceeds from that sale to be paid to the Debtor.

      **4.**      During the course of my representation of the Trustee, I requested from counsel for

JM Inc. JM Inc.'s inventory (the "Inventory") of property that it held on consignment for the

Debtor.  A copy of the Inventory as provided to me by counsel for JM Inc. is included in

**Exhibit 1** as Exhibit A to the Settlement Agreement and Mutual Releases.

      **5.**      In the course of my representation of the Trustee, I learned that the Debtor was the

lessor of a real property office space located at 5901 W. Century Blvd., Suite 1410, Los Angeles,

California 90045 (the "Century Blvd. Property") and that JM Inc. was in possession of the Century

Blvd. Property.  I requested from counsel for JM Inc. a copy of the lease of the Century Blvd.

Property.  **Exhibit 2** is a copy of that lease, including two amendments thereto, as provide to me

by counsel for JM Inc.  Based on my discussions with counsel for JM Inc., I am informed and

believe that JM, Inc. has continued to pay the lease of the Century Blvd. Property.  I am not aware

of any defaults under that lease.

      **6.**      I personally assisted the Trustee in her investigation as to the marketability of the

Inventory.  In connection with that investigation, the Trustee and I spoke with at least three

persons/entities who are professionally involved with the purchase and/or sale at auction of used

airplane parts like those on the Inventory.  Those auctioneers identified to me various issues with

respect to the Inventory.  By way of example, the auctioneers noted that the parts were stale in that

they had been sitting for years and that certain of the models of planes for which the parts are

applicable are generally no longer flying in the United States.  The auctioneers were also made

clear to me that any auction of the parts would necessarily have to take place at the JM, Inc.

facility because the cost of moving and storing the parts for an auction to be held at a different

location would approach or exceed any potential net value of the parts.  In general, the auctioneers

estimated the auction value of the parts at approximately $1.5 million, which amount would be

subject to a commission and the payment of costs of sale.  In order to conduct an auction at the

JM, Inc. location, the Trustee would likely incur substantial additional costs charged by JM, Inc.

1  for lease space and labor as JM, Inc. further reducing the net proceeds to the Estate.  Based on the

2  information provided by the auctioneers, other administrative costs including having professionals

3  present for the sale or to have a separate inventory conducted to comply with US Trustee

4  requirements for an auction and the likely costs of dealing with labor and rental costs charged by

5  JM Inc., the Trustee and I concluded that the sale of the Inventory through auction or to one of the

6  auctioneers would likely net the Estate between $700-$800,000.   I also recall that one of the

7  auctioneers offered to purchase the Inventory for a cash payment of $500,000 to the Estate, but

8  that it was conditioned upon the Trustee arranging for JM Inc. to provide a "rent free" period

9  during which the auctioneer could seek to liquidate the Inventory.

10      **7.**      In addition to the auctioneers mentioned above, I spoke with someone who was a

11  joint venture with JMG in other airplane parts (i.e., those separate and apart from the Inventory).

12  That individual made a cash purchase offer of $900,000 for the "business jet" portion of the

13  Inventory.  It is my understanding that the business jet portion of the Inventory constitutes the

14  most valuable and marketable portion of the Inventory.

15      **8.**      After approval of the Top Jet Settlement, and after the Trustee retained Pillsbury as

16  her special litigation counsel, Pillsbury prepared for the Trustee a draft complaint against the Non-

17  Debtor Parties and others including proposed claims for, among other things, (1) avoidance and

18  recovery of fraudulent transfers, (2) turnover of Estate property, (3) breach of fiduciary duty, (4)

19  denial of the Non-Debtor Parties' proof of claim against the Estate, and (5) substantive

20  consolidation.  At the request of the Non-Debtor Parties' counsel, and under the mediation

21  privilege, I provided a copy of the draft complaint to that counsel.  Thereafter, the Trustee and

22  certain of the Non-Debtor Parties exchanged information, both formally and informally regarding

23  the Estate's claims against the Non-Debtor Parties and the Ohadi/Woolley Group.

24      **9.**      In an effort to resolve the disputes between the Trustee and certain of the Non-

25  Debtor Parties, the Trustee and certain of the Non-Debtor Parties agreed to participate in, and did

26  participate in, a mediation with the Honorable Martin R. Barash, United States Bankruptcy Judge,

27  serving as mediator.  The first mediation session took place on August 30, 2022, beginning at

28  10:00 a.m. and did not conclude until after midnight.  The mediation continued on multiple dates

#30326182v1

1    thereafter.  The mediation was conducted over multiple days in-person, as well as multiple days

2    remotely by telephone and/or video conference.  I estimate that I spent more than 30 hours in

3    active mediation with certain of the Non-Debtor Parties and Judge Barash.

4        **10.**      In connection with the mediation, certain of the Non-Debtor Parties provided to the

5    Trustee, through me, financial information (the "Non-Debtor Confidential Financial Information")

6    for the purpose of permitting the Trustee to understand the financial limitations of the Non-Debtor

7    Parties in light of the very significant claims asserted by the Trustee against the Non-Debtor

8    Parties.  That information was provided to the Trustee confidentially pursuant to the mediation

9    privilege, and then subject to a confidentiality stipulation approved by the Court on January 11,

10   2023.  A copy of that stipulation and the order thereon are included in **Exhibit 8**.  The Non-Debtor

11   Confidential Financial Information consists of approximately 3,317 pages of financial disclosures

12   concerning the Non-Debtor Parties, their holdings, and their affiliates.

13       **11.**      I am aware that the Trustee caused the Non-Debtor Confidential Financial

14   Information to be provided to SL Biggs, her accountants in this case, for analysis of the Non-

15   Debtor Parties' financial condition and an evaluation of the Non-Debtor Parties' ability to respond

16   to a substantial judgment against them.  I discussed with Sam Biggs of SL Biggs portions of that

17   financial information.

18       **12.**      Ultimately, subject to Bankruptcy Court approval, the Trustee and the Non-Debtor

19   Parties reached as settlement and entered into the Settlement Agreement and Mutual Releases (the

20   "Agreement") attached as **Exhibit 1**.  Throughout the process, I was personally involved in the

21   negotiation of the Agreement.  I have not made, and to the best of my knowledge, nobody else has

22   made, any undisclosed side deals with respect to the Agreement or its subject matter and there are

23   no terms to the Agreement except as set forth therein.

24       I declare under penalty of perjury that the foregoing is true and correct and that this

25   declaration was executed this 24th day of April 2023 at Los Angeles, California.

26

27   _____
                                PETER J. MASTAN

28

33

#30326182v1

**DECLARATION OF AMY L. GOLDMAN**

I, AMY L. GOLDMAN, declare

1.      I am an attorney admitted to practice before this Court and I am the duly appointed Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Jet Midwest Group, LLC (the "Debtor") in the above-captioned case. As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.      Exhibit 1 is a true and correct copy of the Settlement Agreement and Mutual Releases (the "Agreement") between me (in my capacity as the Trustee and on behalf of the Estate) and the Non-Debtor Parties. With the assistance of my counsel, I negotiated the Agreement. I have not made, and to the best of my knowledge, nobody else has made, any undisclosed side deals with respect to the Agreement or its subject matter and there are no terms to the Agreement except as set forth therein. I believe the settlement reflected in the Agreement is fair, equitable, and reasonable under the circumstances of this case, including the financial condition of the Non-Debtor Parties as reflected in the Non-Debtor Confidential Information that was provide to me, and in the best interests of the Estate.

3.      After reviewing Non-Debtor Confidential Financial Information, and based upon representations made by the Non-Debtor Parties than the Non-Debtor Confidential Financial Information is true and correct in all material respects and, if it were not so, the Estate's releases of the Trustee Released Parties provided in the Agreement would be annulled, I exercised my reasonable business judgment on the wisdom of a compromise of the Estate's claims against the Non-Debtor Parties, based on all of the circumstances of which I had become aware, settling those claims as set forth in the Agreement. The Agreement is the product of lengthy and often times very difficult and contentious negotiations with the Non-Debtor Parties.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 24th day of April 2023 at Los Angeles, California.

AMY L. GOLDMAN

#30326182v1

34

## DECLARATION OF SAMUEL BIGGS

I, SAMUEL BIGGS, declare:

1.      I am a Certified Public Accountant and a partner in SL Biggs, a division of the accounting firm Singer Lewak.   SL Biggs is the bankruptcy court employed account for Amy L. Goldman in her capacity as the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Jet Midwest Group, LLC (the "Debtor") in the above-captioned case.  As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.      In connection with my services to the Trustee, I received over 3,300 pages of financial records and disclosures (the "Non-Debtor Confidential Information") related to the Non-Debtor Parties for the purpose of evaluating the Non-Debtor Parties' financial condition and ability to respond to a judgment in tens of millions of dollars.  I personally reviewed those financial records.  Based on that review, I do not believe that the Non-Debtor Parties have sufficient available resources to satisfy a judgment in the tens of millions of dollars if such a judgment were obtained by the Trustee.  I personally participated in certain portions of the Trustee's mediation with the Non-Debtor Parties.  I believe that the settlement amount of $6.25 million is equal to or possibly greater than the Trustee's likely recovery from the Non-Debtor Parties if the Trustee were to obtain a tens of millions of dollar judgment against them.  I understand that the Non-Debtor Confidential Information was provided to the Trustee pursuant to various orders and/or privileges such that I am prohibited from disclosing the contents of those documents.  As such, in this declaration, I am only providing my conclusion as to the Non-Debtor's ability to respond to a judgment in the tens of millions of dollars.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 24th day of April 2023 at Beverly Hills, California.

_____
SAMUEL BIGGS

#30326182v1

1

## DECLARATION OF MIKE LOGAN

2     I, Mike Logan, hereby declare as follows:

3     1.    I am over 18 years of age. I have personal knowledge of the facts set forth herein,

4 and, if called as a witness, could and would testify competently with respect thereto.

5     2.    I am the Chief Financial Officer of the following corporate entities: Jet Midwest,

6 Inc., Jet Midwest Technik, Inc., and Jet Midwest Global, LLC (collectively, the "Entities").

7     3.    On April 21, 2023, I executed, on behalf of myself and the Entities, the *"Settlement*

8 *Agreement And Mutual Releases"* that was entered into between, among other parties, Amy L.

9 Goldman, solely in her capacity as Chapter 7 trustee of the bankruptcy estate of Jet Midwest

10 Group, LLC and the Entities (the "Agreement").

11     4.    I have the full and complete authority to enter into the Agreement on behalf of the

12 Entities.

13     I declare under penalty of perjury under the laws of the State of California and the United

14 States of America that the foregoing is true and correct.

15     Executed April __, 2023 at Los Angeles, California.

16

17                   MIKE LOGAN

18

19

20

21

22

23

24

25

26

27

28

1                 **DECLARATION OF PAUL KRAUS**

2       I, Paul Kraus, hereby declare as follows:

3       1.     I am over 18 years of age. I have personal knowledge of the facts set forth herein,

4 and, if called as a witness, could and would testify competently with respect thereto.

5       2.     I am a member of the following corporate entities: Alpha Zulu AV, LLC,

6 Phazebreak Coatings, Inc., Airline Logistics Group, LLC, Dynamic Off Road Motor Sports,

7 LLC, Executive Jet Group 1, LLC, J7 Two, LLC, Jet Partners 1, LLC, PDK Capital, LLC,

8 Phoenixtech, LLC, TLK Group, LLC, VIP Holdings Group, LLC, Ditta Aerea, LLC, and Jet

9 Landing Systems, LLC (collectively, the "Entities").

10       3.     On April 21, 2023, I executed, on behalf of myself and the Entities, the "*Settlement*

11 *Agreement And Mutual Releases*" that was entered into between, among other parties, Amy L.

12 Goldman, solely in her capacity as Chapter 7 trustee of the bankruptcy estate of Jet Midwest

13 Group, LLC and the Entities (the "Agreement").

14       4.     I have the full and complete authority to enter into the Agreement on behalf of the

15 Entities.

16       I declare under penalty of perjury under the laws of the State of California and the United

17 States of America that the foregoing is true and correct.

18       Executed April 21, 2023 at Los Angeles, California.

19

20                                     PAUL KRAUS

21

22

23

24

25

26

27

28

1  <u>**DECLARATION OF KAREN KRAUS**</u>

2  I, Karen Kraus, hereby declare as follows:

3  1.    I am over 18 years of age.  I have personal knowledge of the facts set forth herein,

4  and, if called as a witness, could and would testify competently with respect thereto.

5  2.    I am a member of the following corporate entities: Airline Consolidated Group,

6  Inc., JLS Partners, LLC, Icon Jet, LLC, and Commercial Aircraft Services Holdings, LLC

7  (collectively, the "Entities").

8  3.    On April 21, 2023, I executed, on behalf of myself and the Entities, the "*Settlement*

9  *Agreement And Mutual Releases*" that was entered into between, among other parties, Amy L.

10  Goldman, solely in her capacity as Chapter 7 trustee of the bankruptcy estate of Jet Midwest

11  Group, LLC and the Entities (the "Agreement").

12  4.    I have the full and complete authority to enter into the Agreement on behalf of the

13  Entities.

14  I declare under penalty of perjury under the laws of the State of California and the United

15  States of America that the foregoing is true and correct.

16  Executed April 21, 2023 at Los Angeles, California.

17

18  _____

    KAREN KRAUS

19

20

21

22

23

24

25

26

27

28

38